Strafford
No. 91-421

EMMETT RONAYNE & a.

v.

THE STATE OF NEW HAMPSHIRE

June 18, 1993

*Shaheen, Cappiello, Stein & Gordon*, of Concord (*Peter G. Callaghan* on the brief, and *Steven M. Gordon* orally), for the plaintiffs.

*John P. Arnold*, attorney general (*Jeffrey W. Spencer*, assistant attorney general, on the brief, and *Michael J. Walls*, senior assistant attorney general, orally), for the State.

HORTON, J.   The plaintiffs, a firearms company and its owners and officers, appeal a decision of the Superior Court (*Dickson*, J.), dismissing those counts of the plaintiffs' action alleging that the State's negligent design, construction, and maintenance of one of its highways caused State and federal authorities to improperly initiate and pursue environmental enforcement actions against them. The

plaintiffs argue that it was error for the superior court to hold that their suit against the State failed to state a claim upon which relief could be granted. We affirm.

In order to understand the nature of the trial court's decision, we must first examine the history of the plaintiffs' case and their pleadings as a whole. The plaintiff company, K.W. Thompson Tool Company, Inc. (the company), is a manufacturer of specialty firearms. As part of its manufacturing process it handles and disposes of materials that are regulated under State and federal environmental laws. Beginning in 1980 the New Hampshire Water Supply and Pollution Control Commission (NHWSPCC) and the United States Environmental Protection Agency (EPA) attempted to ensure that the plaintiffs' waste water discharges were in compliance with State and federal environmental regulations. The plaintiffs hired Dufresne-Henry, Inc., an environmental consulting firm, and Edward Rushbrook, Jr., a professional engineer, (the consultants) to facilitate communication with the authorities and advise the plaintiffs on compliance requirements.

Prior to 1985, the EPA began a criminal investigation of the plaintiffs' operations, leading to their indictment for conspiracy and environmental compliance violations. The plaintiffs alleged that the EPA's investigation and the criminal indictment were the result of acts of the consultants. The plaintiffs also alleged that during the investigation the consultants negligently failed to detect gross miscalculations in the quantity of cyanide in the plaintiffs' waste water discharge and improperly gave proprietary information to the authorities. In 1985, pursuant to a plea agreement, the plaintiffs pled guilty to the misdemeanor charges, and the United States dismissed the felony charges with prejudice.

The plaintiffs brought suit in federal court seeking damages for injuries caused by the EPA investigation and federal indictment. Early in the proceedings, the federal court dismissed the plaintiffs' claims against the State and later dismissed their case entirely. *K.W. Thompson Tool Co., Inc. v. U.S.*, 656 F. Supp. 1077 (D.N.H. 1987).

While their case was proceeding in federal court, the plaintiffs brought this action in State court against the same defendants. The federal defendants removed the case to the federal court, where it was remanded to State court as to the non-federal defendants. *Behre v. U.S.*, 659 F. Supp. 747 (D.N.H. 1987). The State moved to dismiss counts I and II of the amended writ on the basis that the plaintiffs failed to state a cause of action and on the basis of sovereign immunity. On June 24, 1991, the superior court granted the motion, adopt-

ing the State's argument. The plaintiffs' motion for reconsideration was denied on August 20, 1991, the trial court finding that the plaintiffs' language was largely conclusory in nature and that they failed to plead sufficient facts to state a claim upon which relief could be granted.

The standard of review on a motion to dismiss for failure to state a claim is

> "whether the allegations [in the plaintiffs' pleadings] are reasonably susceptible of a construction that would permit recovery. In ruling upon a motion to dismiss, the factual allegations of the plaintiff are assumed to be true and all reasonable inferences drawn therefrom are construed most favorably to the plaintiff. If the facts as alleged would constitute a basis for legal relief, the motion to dismiss should be denied. This is a threshold inquiry, requiring the court to test the facts in the complaint against the applicable law."

*Provencal v. Vermont Mut. Ins. Co.*, 132 N.H. 742, 744–45, 571 A.2d 276, 278 (1990) (quotations and citations omitted). Although factual allegations are assumed to be true, a "court need not accept statements in the complaint which are merely conclusions of law." *Jay Edwards, Inc. v. Baker*, 130 N.H. 41, 45, 534 A.2d 706, 708 (1987) (quotations omitted).

The plaintiffs' writ contains six paragraphs that are central to this appeal. They read as follows:

> "32.  State of New Hampshire, through its Department of Transportation, negligently designed, constructed and maintained its highways so that contaminated runoff water streams onto plaintiff's property, said runoff contains pollutants causing irreparable injury to plaintiff's surface and groundwaters.
>
> 33. The run-off contained pollutants and contaminants which were detected in wastewater and sludge analysis and attributed to K.W. Thompson when, in fact, the pollutants and contaminants originated in the State's highway run-off.
>
> . . . .
>
> 35.  The State had a ministerial duty to properly design its highways so runoff water from said highways would not trespass onto Thompson's property.
>
> 36.  The State breached its aforesaid duty by negligently designing the roadway adjacent to Thompson's property

and failing to correct or modify the highway's design and, as a proximate cause thereof, runoff water containing cyanide and other contaminants trespassed upon Thompson's property, all in violation of RSA 541-B.

. . . .

41. The State had and has a ministerial duty to the plaintiffs not to trespass upon Thompson's land.

42. The State breached and continues to breach its ministerial duty by knowingly or negligently causing and/or allowing water containing cyanide and other contaminants to trespass upon Thompson's property, all in violation of RSA 541-B."

Both counts I and II alleged that "as a direct and proximate result" of the State's actions, the company and its officers incurred financial injury and public scorn. The remainder of the writ alleged facts related to the acts of the consultants.

We agree with the trial court's judgment that the plaintiffs' language is conclusory in nature. Stripped of the conclusory language, counts I and II allege only that the State's design, construction, and maintenance of the State highway somehow allowed storm water to carry environmental pollutants onto their property, somehow causing the plaintiffs irreparable property damage, lost business, public scorn, and assorted financial injuries.

■ A plaintiff claiming negligence must show that the defendant owed the plaintiff a duty, that the duty was breached, that the plaintiff suffered an injury, and that the defendant's breach was the proximate cause of the injury. *See Wright v. Dunn*, 134 N.H. 669, 672, 596 A.2d 729, 731 (1991). The plaintiffs failed to describe any acts related to highway design, maintenance, or construction that would allow the court to infer that the State performed these functions in an unreasonable manner, thus breaching its duty to the plaintiff. For instance, in *Cannata v. Town of Deerfield*, 132 N.H. 235, 566 A.2d 162 (1989), the plaintiffs alleged that a culvert had been misplaced and drainage ditches improperly cleaned. In *Allen v. Hampton*, 107 N.H. 377, 222 A.2d 833 (1966), the plaintiffs alleged a *failure* to maintain culverts and drainage ditches, a clear deficiency in performance. In *Gilman v. Concord*, 89 N.H. 182, 195 A. 672 (1937), another road maintenance case, the plaintiff alleged that the defendant, while spraying pesticides to clear the roadside, improperly sprayed them on her property and negligently failed to alert her to the danger; as a result, she fed contaminated hay to her livestock and poisoned them.

In each of these cases, the plaintiff alleged facts from which the court could infer that the defendant's behavior was unreasonable.

The plaintiffs' writ also fails to draw a sufficient causal connection between the State's acts and the list of claimed injuries. The plaintiffs' injuries were the direct result of the EPA criminal investigation and indictment. The plaintiffs allege, however, that the EPA's actions were, in turn, the result of the miscalculations and of the misappropriation of information by the consultants. Even assuming, *arguendo*, that the writ contained sufficient allegations to support a claim that the State's maintenance of the highway was unreasonable, there are no facts in the writ showing that absent the storm water flow, the EPA would not have initiated its criminal investigation. The only allegations linking the storm water flow to the EPA enforcement actions are those alleging that the consultants miscalculated the cyanide levels and that cyanide flowed from the highway to the plaintiffs' property. The plaintiffs allege that cyanide flowing from the highway was attributed to their operations but fail to indicate how the misattribution caused the EPA enforcement actions. It is impossible, from these claims, to infer that the pollutants allegedly originating on the highway were the source of the EPA's criminal concerns. To the contrary, the more reasonable inference drawn from the pleadings is that owing to the gross nature of the consultants' miscalculations the relatively insignificant amount of cyanide flowing from the highway and misattributed to the plaintiffs was unrelated to the EPA enforcement actions.

As a final matter, the parties dispute the nature of count II of the amended writ. The dispute centers on the plaintiffs' use of the word "trespass." The plaintiffs describe the flow of water onto their property as a trespass. They argue, however, that they intend the word to mean "invade," and that the count pleads a negligence action. The defendant reads the count more technically, arguing it pleads a trespass action.

The plaintiffs desire to characterize the count as alleging negligence because trespass is an intentional tort, *Moulton v. Groveton Papers Co.*, 112 N.H. 50, 54, 289 A.2d 68, 72 (1972), and the State's sovereign immunity has not been abrogated for the intentional torts of its employees and agents. RSA 541-B:19, I(d) (Supp. 1992). We note in passing that the plaintiffs' cavalier use of this ancient term of art lends nothing to clear pleading; the nature of the count, however, makes no difference to our final result. Even assuming the count is one of negligence, our analysis above is dispositive.

In summary, the plaintiffs' writ fails to state sufficient facts to state a claim for negligence. Accordingly, we affirm.

*Affirmed.*

THAYER, J., did not sit; the others concurred.