Merrimack
No. 2005-787

WMUR CHANNEL NINE

v.

NEW HAMPSHIRE DEPARTMENT OF FISH AND GAME

Argued: June 7, 2006
Opinion Issued: August 3, 2006

*Orr & Reno, P.A.*, of Concord (*Emily Gray Rice* and *Jeffrey C. Spear* on the brief, and *Ms. Rice* orally), for the plaintiff.

*Kelly A. Ayotte*, attorney general (*Daniel J. Mullen*, associate attorney general, on the brief and orally), for the defendant.

GALWAY, J. The petitioner, WMUR Channel Nine (WMUR), appeals an order of the Superior Court (*Fitzgerald*, J.) denying WMUR's request for attorney's fees after finding that the respondent violated the Right-to-Know Law, RSA chapter 91-A (2001 & Supp. 2005). The respondent, the New Hampshire Department of Fish and Game (department), cross-appeals the superior court's ruling that the department violated RSA chapter 91-A. We affirm.

The record supports the following facts. In 1993, the department revoked John Hardwick's hunting license after he shot and killed another hunter while deer hunting. In September 2004, Hardwick applied for a new hunting license. The department denied the application. Hardwick appealed the decision to the department's executive director, Lee Perry, pursuant to RSA 214:17 (2000). Perry held a pre-hearing conference, at which Hardwick argued that the hearing should be closed to the public

because he was a "simple and shy person who would freeze if he had to make his case" in public. Perry decided to close the hearing to cameras and audio recording devices because he concluded that the commotion caused by television cameras and lights would effectively deprive Hardwick of his opportunity to be heard on his hunting license reinstatement claim. After the conference, Perry issued a notice of hearing stating that the hearing would be closed to television cameras and recording devices. On the date of Hardwick's appeal hearing in November, WMUR appeared with television cameras. An employee of WMUR was permitted to attend the hearing and take notes, but cameras were barred. WMUR filed a petition for an injunction with the superior court to permit access for the cameras; however, the court was unable to act upon the motion before the hearing's conclusion.

Subsequent to the hearing, the parties agreed to submit the matter to the superior court on cross-motions for summary judgment. WMUR's motion requested findings that the department violated RSA chapter 91-A by refusing to allow WMUR to videotape the November hearing, and that the violation entitled WMUR to attorney's fees. The department's cross-motion argued that Perry's decision to exclude cameras was reasonable and that WMUR's rights under RSA chapter 91-A were not violated. The trial court found that RSA 91-A:2, II applied and that the department violated the statute by not permitting cameras into the hearing. The trial court found that WMUR was not entitled to attorney's fees, however, because Perry neither knew nor should have known that his conduct violated RSA chapter 91-A.

Both parties appeal the trial court's order. The parties do not dispute any material facts in the case. The department argues that the trial court erroneously decided that the department violated RSA 91-A:2, II by excluding cameras. WMUR argues that the trial court erroneously decided that WMUR was not entitled to attorney's fees.

In reviewing a trial court's ruling on a motion for summary judgment,

> we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. If our review of the evidence does not reveal any genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the trial court's decision. We review the trial court's application of the law to the facts *de novo*.

*Dalton Hydro v. Town of Dalton*, 153 N.H. 75, 77 (2005) (citations omitted). "The interpretation of a statute, including the Right-to-Know Law, is to be decided ultimately by this court." *Goode v. N.H. Legislative*

*Budget Assistant*, 148 N.H. 551, 553 (2002). We first look to the plain meaning of the words used in the statute and will consider legislative history only if the statutory language is ambiguous. *Id.* at 553-54. "We resolve questions regarding the [Right-to-Know] law with a view to providing the utmost information in order to best effectuate the statutory and constitutional objective of facilitating access to all public documents." *Id.* at 554.

*I. Violation of RSA 91-A:2, II*

Both parties rely upon RSA chapter 91-A, which governs access to public records and meetings. The relevant language from RSA 91-A:2 states: "All public proceedings shall be open to the public, and all persons shall be permitted to attend any meetings of those bodies or agencies. . . . Any person shall be permitted to use recording devices, including, but not limited to, tape recorders, cameras and videotape equipment, at such meetings."

The department does not dispute the trial court's conclusion that Hardwick's hearing before the department was a "public proceeding" under RSA 91-A:2, II. Further, the department concedes that the statute gives any person, including the media, a right to use video recording equipment in a public proceeding. Despite the applicability of RSA 91-A:2, II, the department argues that Perry's decision to exclude cameras from the hearing was correct for two reasons. First, Perry correctly balanced WMUR's right to videotape the hearing against Hardwick's constitutional due process right to have a fair hearing and an opportunity to be heard. Perry's balancing was proper, the department argues, because of his concern that Hardwick would not have been able to present fairly his position with a camera present. Second, the department argues that its administrative rules granted Perry independent authority to exclude the cameras.

Though the department argues that Perry properly balanced WMUR's right to videotape the hearing against Hardwick's right to due process, the department has not developed a constitutional due process argument. The department simply states that Hardwick had a due process right to be heard and to have a fair hearing. The department did not identify whether the rights implicated by Perry's balancing arise under the Federal or the New Hampshire Constitution. If the department meant to argue under the State Constitution, we decline to address the argument. We will not address a party's State constitutional argument on appeal if the party does not specifically invoke in its brief a provision of the State Constitution. *State v. Dellorfano*, 128 N.H. 628, 632 (1986). Because the department failed to invoke a specific due process provision of the New Hampshire

Constitution, we limit our due process analysis to the Federal Constitution. *See Town of Nottingham v. Newman*, 147 N.H. 131, 135 (2001) (addressing solely the defendants' federal due process argument because they failed to invoke Part I, Article 15 of the New Hampshire Constitution).

█ It is well settled that the right to due process under the Federal Constitution arises only when there is a constitutionally protected life, liberty, or property interest at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The department, however, has not identified a constitutionally protected interest that was at stake in Hardwick's hearing. Had the department done so, it presumably would have pointed to Hardwick's interest in obtaining a hunting license. We have never held, however, that a hunting license is a constitutionally protected right, and such a proposition is questionable, since other jurisdictions have specifically held that a hunting or fishing license is not a property interest for purposes of due process. *E.g.*, *Conti v. United States*, 291 F.3d 1334, 1341 (Fed. Cir. 2002); *Pennsylvania Game Com'n v. Marich*, 666 A.2d 253, 257 (Pa. 1995). We decline to consider such a proposition when neither party has argued it. Because the department has failed to demonstrate that Hardwick had a due process right in the hearing, we reject the department's first argument.

█ The department's second argument, that its administrative rules gave Perry the authority to override RSA 91-A:2, II, is also unavailing. The department's rules provide: "A presiding [hearing] officer shall as necessary: (1) Regulate and control the course of a hearing; . . . [and] (8) Take any other action consistent with applicable statutes, rules and case law necessary to conduct the hearing and complete the record in a fair and timely manner." N.H. ADMIN RULES, Fis 203.01(b). The department asserts that this rule permitted Perry to issue an order that excluded cameras from the hearing. An agency, however, must "comply with the governing statute, in both letter and spirit, and agency regulations which contradict the terms of a governing statute exceed the agency's authority." *Appeal of Town of Nottingham*, 153 N.H. 539, 555 (2006) (quotations and citations omitted). There is no dispute that RSA 91-A:2, II applied to the department's hearing, and was, thus, a governing statute. Further, the express language of RSA 91-A:2, II states that "[a]ny person shall be permitted to use recording devices, including . . . videotape equipment, at such meetings." Assuming without deciding that the department's interpretation of Rule 203.01(b) is accurate and that the rule purports to authorize the department to exclude cameras from the hearing, the rule conflicts with RSA 91-A:2, II. Accordingly, Rule 203.01(b) did not

authorize Perry to exclude cameras from Hardwick's hearing in violation of RSA 91-A:2, II. Because the department has failed to provide an adequate reason for Perry's exclusion of cameras at Hardwick's hearing, we affirm the trial court's ruling that the department violated RSA 91-A:2.

*II. Attorney's Fees*

Whether the trial court should have awarded attorney's fees to WMUR implicates RSA 91-A:8, which states, in pertinent part:

> If any body or agency or employee or member thereof, in violation of the provisions of this chapter, refuses to provide a public record or refuses access to a public proceeding to a person who reasonably requests the same, such body, agency, or person shall be liable for reasonable attorney's fees and costs incurred in a lawsuit under this chapter provided that the court finds that such lawsuit was necessary in order to make the information available or the proceeding open to the public. Fees shall not be awarded unless the court finds that the body, agency or person knew or should have known that the conduct engaged in was a violation of this chapter . . . .

Accordingly, under RSA 91-A:8, attorney's fees shall be awarded if the trial court finds that: (1) the lawsuit was necessary to make the information available; and (2) "the body, agency, or person knew or should have known that the conduct engaged in was a violation of [RSA chapter 91-A]." *Prof'l Firefighters of N.H. v. HealthTrust*, 151 N.H. 501, 507 (2004).

Neither party contests that WMUR's petition for an injunction was necessary for WMUR's cameras to gain access to the hearing. The parties dispute only whether Perry knew or should have known that his exclusion of the cameras violated RSA chapter 91-A. WMUR argues that RSA 91-A:2 clearly states that any person shall be allowed to videotape a public proceeding, subject to exceptions which did not apply in this case. Every person is presumed to know the law, WMUR asserts; thus, Perry should have known that WMUR had a right to videotape the hearing. The department argues that, even though RSA chapter 91-A applied to the hearing, Perry reasonably believed that he needed to balance WMUR's right to videotape the hearing against Hardwick's due process right to be heard.

As stated above, we have never decided whether or not there is a constitutionally protected property interest in a hunting license. We have,

however, recognized that the privilege of holding a driver's license is a legally protected interest requiring due process prior to suspension. *Bragg v. Director, N.H. Div. of Motor Vehicles*, 141 N.H. 677, 678 (1997). Based upon the state of the case law, we cannot conclude that Perry should have known not to balance Hardwick's alleged due process rights against WMUR's right under RSA chapter 91-A to videotape the hearing. *See Goode v. N.H. Legislative Budget Assistant*, 145 N.H. 451, 455 (2001) (concluding that defendant neither knew nor should have known that its conduct violated RSA chapter 91-A due, in part, to the state of case law). As for whether Perry in fact knew that excluding WMUR's cameras from the hearing would violate RSA chapter 91-A, we see no error in the trial court's finding that he did not know that his conduct would violate the statute because he was confused about the extent to which a judicial standard, instead of RSA chapter 91-A, applied to the proceeding. Accordingly, we affirm the trial court's denial of WMUR's request for attorney's fees.

*Affirmed.*

DALIANIS, DUGGAN and HICKS, JJ., concurred.