**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2015-0720, <u>City of Keene v. James Cleaveland & a.</u>, the court on December 22, 2016, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The petitioner, the City of Keene (City), appeals an order of the Superior Court (<u>Kissinger</u>, J.) denying its request for injunctive relief. We affirm.

The relevant facts follow. In 2013, the City filed suit against the respondents for, among other things, tortious interference with contractual relations and civil conspiracy, and sought preliminary and permanent injunctive relief. <u>See</u> <u>City of Keene v. Cleaveland</u>, 167 N.H. 731, 733-34 (2015). The claims were based upon the respondents' activities, which included "follow[ing] closely behind the City's parking enforcement officers (PEOs) on their daily patrols through downtown Keene, videotaping them, criticizing their work, and putting money into expired parking meters before a parking ticket was issued." <u>Id</u>. at 733. These activities are known as "Robin Hooding."

After holding three days of evidentiary hearings, the trial court dismissed the City's claims and denied its request for injunctive relief. <u>Id</u>. at 735, 736-37. On appeal, we affirmed the trial court's dismissal of the City's claims. <u>Id</u>. at 741. However, we determined that the trial court erred when, "solely because it had dismissed the underlying tortious interference claim, it denied injunctive relief without considering all the factual circumstances of the case." <u>Id</u>. at 743. Accordingly, we vacated the trial court's denial of the City's request for injunctive relief and remanded for the trial court "to address the issue of whether the governmental interests and factual circumstances asserted by the City in its petition are sufficient to warrant properly tailored injunctive relief." <u>Id</u>. at 744. We expressed no opinion as to whether the City's allegations, "if proven, are sufficient to warrant the trial court's exercise of its equitable power, or as to whether the particular injunctive relief requested by the City would violate the Federal or State Constitutions." <u>Id</u>.

On remand, the trial court held an additional evidentiary hearing, following which it denied the City's request for injunctive relief. At the outset, the court found that, since October 2013, the frequency of the respondents' conduct "has decreased significantly." The court found no evidence that three of the respondents, Pete Eyer, Kate Ager, or Graham Colson, had been involved in the alleged activities in more than two years and, as to a fourth respondent, James Cleaveland, it found that he had "only had a minimal role, engaging in

limited Robin Hooding on one or two occasions." Thus, "[c]onsidering all of the evidence presented in the 2013 hearings and most recent hearing," the trial court found that injunctive relief was "not justified" against those four respondents. The City does not contest this ruling and is no longer seeking injunctive relief with respect to them. Accordingly, this order focuses only upon respondents Ian Freeman and Garret Ean.

The trial court reviewed the allegations by PEOs about Freeman's and Ean's activities prior to October 1, 2013. These allegations included testimony from the City's three PEOs that, among other things, Freeman and Ean called the PEOs derogatory names, followed them at close proximity thereby causing the PEOs to experience stress, anger and frustration, and videotaped them. See Cleaveland, 167 N.H. at 733-35.

The trial court also reviewed the allegations by PEOs about Freeman's and Ean's activities since October 1, 2013. The City's two PEOs related that Ean had continued Robin Hooding three to four days per week for part of the work day, and that Freeman's activity was less frequent since October 2013 and had included one videotaped occasion that a PEO said had "impeded her from doing her job." The PEOs testified that they have felt "panicked," and "stressed and anxious" about the Robin Hooding activities.

The trial court found that the activities of Freeman and Ean "have been reduced in frequency from pre-October 2013 levels." The trial court further found that "Freeman's conduct, while arguably more offensive in style than Ean's," had "notably dropped off" since October 2013. Ean, who was the only respondent who continued to Robin Hood on a "fairly regular basis," was found to be "generally non-combative and unobtrusive."

In considering the balance of hardships and the public interest, the trial court "examine[d] both the . . . First Amendment rights [of Freeman and Ean] and the [City's] governmental interests," noting that "the City does not challenge that the content of [Freeman's and Ean's] speech is protected under the First Amendment as speech on a matter of public concern taking place in a traditional public forum." The trial court agreed with the City that it "has a significant interest in protecting the safety and well-being of its employees," stating, however, that "[t]o the extent conduct of [Freeman and Ean] rises to the level of violating criminal statutes, there is a remedy available to the City and the PEOs." The trial court weighed the benefits of the requested injunctive relief against the effect of that relief upon Freeman's and Ean's constitutionally protected speech and concluded that, based upon "all of the evidence and the testimony of all of the witnesses both from 2013 and in the last two years," the City "ha[d] not met its burden to warrant any injunctive relief." The court stated that "[e]ven though the City has significant governmental interests at stake," those interests "are not sufficient to warrant an infringement on [Freeman's and Ean's] First Amendment Rights." Accordingly, "[i]n the exercise of its equitable discretion," the court denied the relief requested by the City. This appeal followed.

"The issuance of injunctions, either temporary or permanent, has long been considered an extraordinary remedy." ATV Watch v. N.H. Dep't of Resources & Econ. Dev., 155 N.H. 434, 437 (2007) (quotation omitted). "An injunction will issue if there is an immediate danger of irreparable harm to the party seeking injunctive relief, and there is no adequate remedy at law." UniFirst Corp. v. City of Nashua, 130 N.H. 11, 14 (1987) (quotation omitted); see ATV Watch, 155 N.H. at 437.

"It is within the trial court's sound discretion to grant an injunction after consideration of the facts and established principles of equity." Town of Atkinson v. Malborn Realty Trust, 164 N.H. 62, 66 (2012). "[B]ecause the division line between equity and law is not precise . . . courts have considerable discretion in determining whether equity should intervene to aid litigants in the protection of their legal rights." Sands v. Stevens, 121 N.H. 1008, 1011 (1981) (quotation omitted). We will uphold the trial court's decision absent an error of law, an unsustainable exercise of discretion, or clearly erroneous findings of fact. Atkinson, 164 N.H. at 66.

On appeal, the City argues that the trial court's order "is unreasonable and untenable" because the City "has significant governmental interests that deserve protection," and its proposed injunctions "are constitutional and do not impose a significant burden" upon the respondents' speech. (Bolding omitted.) According to the City, "the pertinent question before the trial court was not whether the City has established sufficient interests to warrant an injunction, but rather, how best to tailor the scope of injunctive relief." To the contrary, the question before the trial court was "whether the governmental interests and factual circumstances asserted by the City . . . are sufficient to warrant properly tailored injunctive relief." Cleaveland, 167 N.H. at 744. As set forth above, taking into consideration the governmental interest that would be served, the trial court weighed the benefits of the requested relief against the effect that relief would have on the respondents' constitutionally protected speech, and, based upon the factual record before it, exercised its equitable discretion to deny the proposed injunction.

As the appealing party, the City has the burden of demonstrating reversible error. Gallo v. Traina, 166 N.H. 737, 740 (2014). Based upon our review of the trial court's order, the City's challenges to it, the relevant law, and the record submitted on appeal, we conclude that the City has not demonstrated reversible error. Id.

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.

**Eileen Fox,
Clerk**

3